UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT P.,[1] | ) |
| | ) No. 22 CV 5700 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| LELAND DUDEK, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) May 2, 2025 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Scott P. seeks disability insurance benefits ("DIB") and social security income ("SSI") asserting that he is disabled by bipolar disorder, severe somatic symptom disorder ("SSD") and related disorders, fibromyalgia, anxiety, and OCD. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for benefits. For the following reasons, Scott's remand request is granted:

**Procedural History**

Scott filed DIB and SSI applications in March 2020 claiming disability onset on November 7, 2019. (Administrative Record ("A.R.") 15, 222-29.) After his applications were denied initially and upon reconsideration at the administrative level, (id. at 15, 59-122), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 15, 135-51). Scott appeared with his

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Scott's first name and last initial in this opinion to protect his privacy to the extent possible.

attorney at an October 12, 2021 telephonic hearing at which he and a vocational expert ("VE") testified. (Id. at 38-58.) The ALJ ruled on October 29, 2021, that Scott is not disabled. (Id. at 15-32.) The Appeals Council denied Scott's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Scott then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 8).

## Analysis

Scott argues that the ALJ erred by: (1) failing to acknowledge certain impairments, including severe SSD[2] and fibromyalgia, at step two and when assessing his residual functional capacity ("RFC"); (2) deeming the opinions of Scott's treating therapist, Riva Evette Edmonds-Bonner, and treating psychiatrist, Dr. Nageswara Nagarakanti, "somewhat persuasive" and "not persuasive," respectively; and (3) discounting Scott's subjective symptoms. (See generally R. 20, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such

---

[2] SSD is "characterized by an extreme focus on physical symptoms—such as pain or fatigue—that causes major emotional distress and problems functioning." https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/symptoms-causes/syc-20377776 (last visited May 2, 2025). A person suffering from SSD may "think the worst about [his] symptoms and frequently seek medical care, continuing to search for an explanation even when other serious conditions have been excluded. Health concerns may become such a central focus of [the person's] life that it [becomes difficult] to function." *Id.*

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Having considered the arguments and record under this standard, the court finds that remand is warranted.

**A.     Step Two & RFC**

Scott argues that the ALJ erred at step two by recognizing only his severe impairment of bipolar disorder, and not his other medically determinable impairments, and again when developing the RFC by failing to account for the combined effects of such impairments. (R. 20, Pl.'s Mem. at 8.) At step two an ALJ is required to consider whether a claimant's impairments qualify as "medically determinable," either alone or in combination, 20 C.F.R. §§ 404.1520(c), 416.920(c), and if so, whether they are "severe," meaning only more than "slight," *Colson v. Colvin*, 120 F. Supp. 3d 778, 788 (internal quotations and citation omitted). But a

remand may not be required if the ALJ accounted for the combined effects of the claimant's medically determinable impairments when assessing the RFC. *See Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011); *Colson*, 120 F. Supp. 3d at 789. Here, the ALJ did not perform the requisite analysis at step two or when assessing Scott's RFC.

Scott states in his disability report that "[b]ipolar disorder with psychoses" limits his ability to work, (A.R. 245), and he explains in his function report that his "mental disabilities have become physical," further limiting his ability to "hold any type of job," (id. at 269). The objective medical evidence reflects a "consistent diagnosis" of bipolar disorder since 2016 with psychiatric hospitalizations in 2017 and 2019, (id. at 26; see also id. at 429, 463, 468, 509-16), and other impairments, including SSD, (see id. at 434 (November 2019 record reflecting Scott's somatization features secondary to bipolar disorder), 468 (November 2019 psychiatric record diagnosing somatoform disorder), fibromyalgia, (see id. at 544-45 (neurologist Dr. Jeffrey Yu's November 2020 record noting "[p]roximal weakness of limb," "[m]yoclonic jerking," and fibromyalgia diagnosis), 701 (rheumatologist Dr. David Mael's June 2021 record indicating "[s]igns and symptoms are consistent with the diagnosis of fibromyalgia"), 726 (Scott's primary care physician's February 2021 record noting "tenderness on the palpation of the anterior chest wall," "[l]ocalized tenderness palpation over the spinous processes lower thoracic area with paraspinal muscle tenderness," and "[p]ositive fibromyalgia tender points in the neck, elbows and knees), 736-37 (Dr. Yu's February 2021 record noting "proximal limb-girdle

4

weakness but with giveaway characteristics," "patchy deficits to pinprick in [] extremities," and bilateral extremity weakness")), and anxiety and OCD, (see id. at 468 (November 2019 in-patient psychiatric record noting panic attacks secondary to bipolar disorder)).

Medical source statements also reveal medically determinable impairments in addition to bipolar disorder. For example, in September 2020 a consultative psychologist diagnosed Scott with: (1) major depressive disorder, single episode, with severe anxious distress; (2) illness anxiety disorder; (3) OCD with fair to poor insight; and (4) severe, persistent SSD. (Id. at 527-31 (summarizing Scott's diagnoses as follows: "[Scott] demonstrated a depressive disorder and an anxiety disorder, an obsessive-compulsive disorder, and somatic!!!!!").) The consultant found "no evidence of unconscious fabrication of responses," (id. at 529-30), and determined that Scott would not be competent to manage funds if awarded benefits, (id. at 531). Scott's treating therapist Edmonds-Bonner noted Scott's somatic and psychological symptoms and opined that they limit his ability to be consistent or reliable in the workplace.[3] (Id. at 781.) Given this evidence revealing other impairments besides bipolar disorder, the ALJ erred at step two by not considering whether these

---

[3] Scott's treating psychiatrist, Dr. Nageswara Nagarakanti, further found that Scott's "bipolar and related disorders" would cause him to be off task more than 15% of the time because of marked deficits in the functional areas of concentration, persistence, and pace, social interactions, and adapting to changes. (A.R. 782-84.) According to Dr. Nagarakanti, limitations from Scott's impairments would cause him to be off task more than 30% of the time and miss six or more workdays per month. (Id. at 784.)

5

impairments qualify as medically determinable impairments and, if so, whether they are severe in nature.

When crafting Scott's RFC, the ALJ erred again by failing to consider the combined effects of Scott's impairments, including SSD and fibromyalgia. (Id. at 20-30.) Although the ALJ discussed evidence noting these impairments, he dismissed it in part because Scott experienced "symptom escalation" when "not taking his prescribed medications" and reported "improvement" in symptoms at times. (Id. at 23-26.) As Scott points out, however, claimants suffering from mental impairments may have difficulty maintaining treatment and symptoms may ebb and flow. (R. 20, Pl.'s Mem. at 10-12); *see also Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006) (noting that while bipolar disorder is treatable with medication, "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." (citations omitted)); *Martinez*, 630 F.3d at 697 ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.").

But in so finding, the ALJ failed to perform the analysis the Social Security Administration ("SSA") requires. Indeed, the Seventh Circuit recently admonished ALJs to follow specific fibromyalgia SSA guidance because of the subjectivity of symptoms and inability to objectively measure pain other than with a "trigger-point

6

assessment." *Swiecichowski v. Dudek*, 133 F.4th 751, 753, 757 (7th Cir. 2025) (noting that "unique properties" of fibromyalgia are "notoriously difficult to assess" (internal quotations and citations omitted)). That guidance, which is set forth in Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012), instructs the claimant at step two to "point to a diagnosis of fibromyalgia and provide evidence of certain diagnostic criteria." *Swiecichowski*, 133 F.4th at 757. Here, the record appears to provide the required showing. (See A.R. 544-45 (neurologist Dr. Yu's findings of "[p]roximal weakness of limb," "[m]yoclonic jerking," and fibromyalgia), 701 (rheumatologist Dr. Mael's finding that Scott's "[s]igns and symptoms are consistent with the diagnosis of fibromyalgia"), 726 (primary care physician reports of "tenderness on the palpation of the anterior chest wall," "[l]ocalized tenderness palpation over the spinous processes lower thoracic area with paraspinal muscle tenderness," and "[p]ositive fibromyalgia tender points in the neck, elbows and knees"), 736-37 (Dr. Yu's finding of "proximal limb-girdle weakness but with giveaway characteristics," "patchy deficits to pinprick in [] extremities," and bilateral extremity weakness").) But the ALJ failed to acknowledge the same.

Next, an ALJ must "follow the normal two-step process for determining the claimant's RFC," considering first whether fibromyalgia "could reasonably be expected to produce the claimant's alleged symptoms, including disabling pain," and second whether "the intensity and persistence of those symptoms" limits the claimant's ability to work. *Swiecichowski*, 133 F.4th at 757 (internal quotations and citation omitted). When answering these questions, the ALJ must consider: "the

7

objective medical evidence; the individual's subjective statements; information provided by medical sources; and the claimant's level of pain, medication, treatment, and daily activities." *Id.* (citations omitted). The ALJ must also "consider [the] longitudinal record . . . because the symptoms of [fibromyalgia] can wax and wane," resulting in "bad days and good days"—while "be[ing] mindful that pain, fatigue, and other symptoms associated with fibromyalgia may result in limitations that should be incorporated into the RFC." *Id.* at 757-58 (citing SSR 12-2p) (internal quotations omitted).

Applying this guidance here, the ALJ's RFC analysis falls short. The ALJ recognized Scott's "complain[ts] of physical problems such as chest pain, shortness of breath, weakness, and myalgias/fibromyalgia type pain," (A.R. 27), and cited objective medical evidence reflecting the same, (id. at 25-26 (citing id. at 545 (Dr. Yu's "[i]ndications" of "weakness, myoclonic jerking, and fibromyalgia"), 691 (Dr. Mael's decision to add second daily dose of Gabapentin despite finding that Scott's fibromyalgia symptoms "improved somewhat"), 726 (Dr. Yu's findings of "positive fibromyalgia tender points in the neck, elbows, and knees"), 736 (Dr. Yu's neurological findings on examination of "notable proximal, limb-girdle weakness, but with giveaway characteristics, as well as patchy deficits to pinprick in his extremities"))). But the ALJ discounted these findings because "all workup has been within normal limits or generally unremarkable and does not support ongoing physical medically determinable impairments." (Id. at 27.) Accordingly, the ALJ found no reason to consider the limiting effects of Scott's fibromyalgia in combination

8

with his bipolar disorder or other impairments. (See id.) But in so ruling, he failed to explain how his decision comports with the required fibromyalgia analysis under SSR 12-2p.

The government asserts that no error occurred because "[n]o physician indicated that [Scott] required more physical restrictions than those the ALJ assessed." (R. 21, Govt.'s Resp. at 5.) The problem with this argument is that the consultative psychologist, treating therapist, and treating psychiatrist each endorsed restrictions based in part on impairments the ALJ failed to consider. (See, e.g., A.R. 527-31 (Scott would not be competent to manage funds if awarded benefits), 780-81 (Scott would be inconsistent and unreliable in the workplace), 782-85 (Scott suffers marked limitations in concentration, persistence, and pace and interactions with the general public, supervisors, and peers, and his mental impairments exacerbate his physical symptoms, including pain).) As a result, the court cannot say that the ALJ's error was harmless.

**B.     Opinion Evidence**

The court turns next to Scott's arguments concerning the opinion evidence. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and

9

explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor directs the ALJ to consider and explain how the opinion is consistent with all other medical and non-medical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the medical source's specializations and relationship with the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

The ALJ here found "somewhat persuasive" treating therapist Edmonds-Bonner's September 21, 2021 opinion. (A.R. 28-29.) Edmonds-Bonner treated Scott with psychotherapy on a biweekly basis since July 2020. (Id. at 780.) More than a year later, she determined that Scott suffers from "unspecified bipolar disorder and related disorder" and detailed symptoms he experiences when "trigger[ed]," such as "catastrophic thinking" when encountering other people, "exaggerated worry [and] fear" when interacting with supervisors, coworkers, and the public, and "elevate[d] physical symptoms of anxiety," resulting in his avoidance of social interactions. (Id. at 780-81.) Edmonds-Bonner then opined that Scott's mental impairments "markedly impact [his] ability to sustain concentration and attention," rendering him unable "to think clearly" and causing him "to abort tasks." (Id. at 781.) And despite having a positive response to "pharmacotherapy and psychotherapy," Edmonds-Bonner opined that Scott still has difficulty communicating with others, continues to "struggle[] to complete daily routines," and "experiences somatic and psychological symptoms that cause his ability to be consistent and reliable to be unpredictable." (Id.)

10

The ALJ concluded that Edmonds-Bonner's opinion was "somewhat persuasive" as to Scott's social interaction limitations. (Id. at 28.) In so finding, the ALJ acknowledged Edmonds-Bonner's treating relationship with Scott, the consistency in which her notes record "perceived physical problems," and her provision of "coping mechanisms" to help Scott manage symptoms. (Id.) The ALJ assigned Scott a moderate limitation in interacting with others, crediting Scott's reports that he is unable to participate in social gatherings but finding "no evidence that he experiences difficulty getting along with other people when he is out in public." (Id. at 19.) But in affording only some persuasiveness to Edmonds-Bonner's opinion, the ALJ relied on: the increased efficacy of treatment when Scott is compliant; Scott's ability to get along socially with his mother and girlfriend, to "take walks, go to the store, and attend appointments with no evidence of difficulty"; and the lack of a formal SSD diagnosis or "significant objective clinical findings" by Edmonds-Bonner or Dr. Nagarakanti. (Id. at 28-29; but see id. at 272 (noting Scott's reports that he does not go out alone because he "often get[s] lost and confused"), 434 (diagnosing Scott with somatization features disorder), 468 (diagnosing somatoform disorder).)

Scott challenges the ALJ's analysis of Edmonds-Bonner's opinion, (R. 20, Pl.'s Mem. at 14-16), because the ALJ only precluded him from "work involving direct public service or in crowded hectic environments" and limited him to "brief and superficial interaction with supervisors and co-workers," (A.R. 20, 29). But in doing so, the ALJ failed to explain how Scott could perform interactions allowed under the

11

RFC given Edmonds-Bonner's opinion that Scott's "frustration and anxiety make[] it difficult for him to communicate with people at home and in the workplace." (See id. at 780-81 (Scott experiences "catastrophic thinking" when encountering other people and "exaggerated worry [and] fear" when coping with supervisors, coworkers, and the public).)

The court agrees that the ALJ erred in this regard. Having assigned some persuasiveness to Edmonds-Bonner's opinion regarding Scott's social interaction limitations, the ALJ should have explained why he restricted some but not all social interactions that Edmonds-Bonner opined Scott could not perform. (Id.) Although the ALJ suggests that the limitations he assessed are sufficient—and they may be—in part because Scott has "a good relationship with his mother and girlfriend" and he can "take walks" and "go to the store," (id. at 29), the ALJ failed to explain how those facts support Scott's RFC—or more generally, an ability to sustain full-time competitive work.

## Conclusion

For the foregoing reasons, Scott's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim
United States Magistrate**